**A F F I D A V I T**

STATE OF WEST VIRGINIA

COUNTY OF KANAWHA, to-wit:

I, Kachine Jonese, being first duly sworn, do hereby depose and state as follows:

**INTRODUCTION**

1.     I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been since June 2021.   I am currently assigned to the ATF Louisville Field Division, Charleston, WV Field Office.

2.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of a black in color Apple iPhone in a white, blue, and black case, more fully described in Attachment "A," and the extraction from that property of electronically stored information described in Attachment "B."

3.     The contents of Attachment "A" and Attachment "B" to this Affidavit and application for a search warrant are hereby incorporated by reference.

4.     The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officers, and witnesses.

1

5.   Because this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause for this warrant.

## STATUTORY AUTHORITY

6.   This investigation concerns alleged violations of federal law, including but not limited to 18 U.S.C. § 922(g)(3) (Possession of a Firearm by a Person Who Is an Unlawful User of or Addicted to Controlled Substances); 18 U.S.C § 924(c) (Possession of a Firearm in Furtherance of a Drug Trafficking Offense); and 21 U.S.C § 841(a)(1) (Possession with Intent to Distribute a Controlled Substance).

## AFFIANT'S TRAINING AND EXPERIENCE

7.   Your Affiant is currently employed as a Special Agent with the ATF.

8.   Your Affiant graduated from the Federal Law Enforcement Training Center, where I learned basic criminal investigation techniques. In addition, I graduated from the ATF National Academy, where I learned about federal firearms laws, federal explosives laws, bomb scene investigations, and arson investigations.

9.   Your Affiant has received investigative training, conducted, and participated in investigations of violations of

2

federal criminal laws, including those relating to firearms and controlled substances.  These acts commonly involve the criminal use and transfer of firearms, illicit drug trafficking, acts of arson, criminal possession, or use of explosives, and/or destructive devices.

10.    In my current position as an ATF Special Agent assigned to the Charleston, WV Field Office, my primary responsibilities include investigating individuals or groups who have committed violations of the federal firearms and narcotics laws.  Within that role, my job duties include, but are not limited to:

**a.** Functioning as a case agent, which entails the supervision of specific investigations.

**b.** Interviewing witnesses relative to the illegal trafficking of drugs and firearms and the distribution of monies and assets derived from these illegal acts.

**c.** Functioning as a surveillance agent observing and recording movements of persons trafficking in drugs and firearms and those suspected of trafficking in drugs and firearms.

**d.** Drafting, obtaining, and executing search warrants.

## AFFIANT'S KNOWLEDGE OF CELLULAR TELEPHONES AND THEIR USE IN CRIMINAL ACTIVITY

11.    Your Affiant is personally, and professionally, familiar with cellular telephones or mobile telephones.

3

12.    I know that a cellular telephone or mobile telephone is a handheld wireless device used primarily for voice communications between parties in remote locations.

13.    I am aware that cellular telephones usually include a "call log," which records the telephone number, date, and time of calls made to and from the phone.

14.    In addition to enabling voice communications, I know that cellular telephones now offer a broad range of functions, which include, but are not limited to: storing names and phone numbers in electronic address books or contact lists; sending, receiving, and storing text messages and emails; taking, sending, receiving, and storing still photographs and moving videos; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; accessing and downloading information from the internet; and sending, receiving, and storing GPS coordinates of a phone's location.

15.    Based on my knowledge, training, and experience, I know that cellular phones, such as the Apple iPhone described in Attachment "A," can store electronic information for long periods of time.

16.    Based on my training and experience, I know that it is a common practice for drug traffickers to use and keep cellular telephones in order to facilitate their drug trafficking business. Cellular telephones allow traffickers to remain in

close and nearly instantaneous communication with their customers, suppliers, and co-conspirators.

17.   In my experience, it is common for cellular telephones used by drug distributors and users to contain evidence of drug trafficking.  This evidence includes call logs, text messages, stored emails, contact lists, photographs and video images of drugs, drug proceeds, and drug trafficking paraphernalia and activity, and other information.

18.   I also know from my training and experience that the electronic memories of cell phones, including social media applications, have been found to contain evidence of illegal firearm possession, including communications regarding when and how an illegal firearm was obtained, who obtained the illegal firearm for the possessor, and the motivation for possessing the illegal firearm.

19.   In addition, based on my training and experience and conversations with other law enforcement officers, I know that people involved in narcotics distribution and/or firearms possession communicate with each other on social media applications, to include Facebook, Snapchat, Instagram, WhatsApp, etc. Based on my training and experience, and in conversations with other law enforcement officers, I know that individuals will oftentimes set up dates and times for "deals" on social media applications such as Facebook Messenger and WhatsApp. Based on my

training and experience, people are able to, and generally do, access said social media applications on their mobile devices.

20.    I also know that people who sell or possess firearms illegally frequently take or cause to be taken photographs or other images of themselves in possession of firearms, their associates, their property, and assets with cell phones. They also frequently utilize cell phones as a way to communicate with other individuals in order to purchase or sell firearms. Based on my training and experience I know that those who possess and/or traffic narcotics will oftentimes simultaneously possess a firearm to aid in their drug trafficking efforts.

## PROBABLE CAUSE

21.    In April 2023, members of the ATF Charleston, WV Field Office and the Charleston Police Department (CPD) Special Enforcement Unit (SEU) initiated an investigation into Curon Cameron CORDON, who was suspected to be selling fentanyl pills in the Charleston, WV area. CORDON eventually informed a confidential informant (CI) involved in the investigation that he was able to sell the CI firearms as well. Multiple controlled purchases of firearms and narcotics were conducted from CORDON throughout the investigation, which spanned approximately two months.

22.    In connection with the investigation described in paragraph 21 of this Affidavit, on June 15, 2023, members of the

ATF Charleston, WV Field Office and the CPD SEU executed a federal search warrant at 132 Swinburn Street, Charleston, Kanawha County, WV 25302. This is the residence of Kayla MCCALLISTER, a target of the investigation described in paragraph 21. Upon entering the residence, officers made contact with an individual who was later identified as Tracy Don JACKSON, Jr. This Affidavit is made to support a warrant authorizing the search of a cell phone believed to belong to JACKSON for the reasons explained in paragraph 24 of this Affidavit.

**23.** JACKSON was lying on the couch in the living room on the first floor of the residence at the time officers entered. During the search of the residence, officers located a loaded Glock, Model 48, 9-mm caliber pistol, SN: BLGA523, and a plastic bag containing approximately 13.88 grams of suspected fentanyl in between a couch cushion and an arm of the couch, underneath the area where JACKSON's head had been resting. Based upon my training and experience, I know that 13.88 grams is a distribution quantity of fentanyl. Officers also located in the same area of the couch a plastic bag that contained suspected marijuana and two (2) and a half suspected fentanyl pills, which appear similar to the suspected fentanyl pills the CI purchased from CORDON during the controlled purchases described in paragraph 21 of this Affidavit. In addition, officers found two Glock magazines in a plastic bag

on a chair beside the couch. Those Glock magazines fit inside the Glock pistol that was found in the couch.

24.     The Apple iPhone described in Attachment "A" was found on the floor near the couch, in close proximity to JACKSON, and was the only phone located in the living room. The phone was subsequently taken into ATF custody. JACKSON was the only occupant of the living room at the time officers made entry into the residence. In addition, when JACKSON was searched incident to his arrest, he did not have a phone in his possession.

25.     Throughout the residence, officers also located multiple digital scales, which suggested narcotics distribution, as well as evidence of drug usage, including cut straws, a glass smoking pipe, and plastic baggies containing residue consistent with drugs.

26.     JACKSON's possession of a distribution quantity of suspected fentanyl and a firearm, which I know to be a common tool of the trade for drug traffickers, along with the other evidence of drug distribution and usage found in the residence, establish probable cause to believe that JACKSON is involved in the distribution of controlled substances and that the Apple iPhone described in Attachment "A" contains evidence of that crime. Additionally, an open-source search of Facebook shows that Tracy Don JACKSON, Jr., has a Facebook account under the name of "Tommi Egan." As stated above, based on my training and

experience, as well as communication with other law enforcement officers, I know that individuals distributing controlled substances often use social media to communicate with their sources of supply and arrange distribution. Therefore, there is probable cause to search the social media applications located on the iPhone described in "Attachment A."

27.     Although the Apple iPhone described in Attachment "A" is believed to belong to JACKSON for the reasons outlined in paragraph 23 of this Affidavit, there is nonetheless probable cause to believe that evidence of a crime will be found on the phone, even if it belongs to someone else inside the residence. Specifically, the phone was found inside the residence of Kayla MCCALLISTER, a target of the investigation described in paragraph 21 of this Affidavit, during the execution of a federal search warrant related to that investigation. A federal search warrant for another Apple iPhone believed to belong to MCCALLISTER has already been issued.

## INTERVIEWS

28.     JACKSON was arrested on a state warrant for charges unrelated to the execution of the federal search warrant and transported to the Charleston Police Department for processing. Following his arrest, JACKSON waived his *Miranda* rights and agreed to a recorded interview with officers. During the interview, JACKSON stated that the pills located during the execution of the

9

search warrant were fentanyl. JACKSON explained that he would
purchase the pills for approximately $25 each and would sometimes
provide pills to MCCALLISTER and her boyfriend, Adrian ROSS, in
exchange for them allowing him to stay at their house. When asked
about his own drug usage, JACKSON advised that he took pills and
smoked marijuana almost daily.

29.     JACKSON also told officers that he once found a .380
caliber pistol in a bush and gave it to ROSS because ROSS had
previously expressed to JACKSON that he wanted a firearm to
protect his children.   JACKSON stated that he became angry at
ROSS because ROSS ultimately traded the firearm for two (2) pills.

30.     ROSS was also interviewed following the execution of
the search warrant. When asked if JACKSON had a firearm in the
residence, ROSS stated that if JACKSON had a gun in the house,
it would be on or in the couch, somewhere close to him.   The
Glock pistol found during the execution of the search warrant
was retrieved from the part of the couch where Jackson's head
had been resting.

## CUSTODY OF THE CELLULAR TELEPHONE

31.     The Apple iPhone described in Attachment "A" was seized
by law enforcement during the search warrant conducted at 132
Swinburn Street, Charleston, Kanawha County, WV 25302, the
residence of Kayla MCCALLISTER.   After the Apple iPhone was
seized, it was taken to the ATF Charleston, WV Field Office, 300

Summers Street, Charleston, WV 25301, where it was placed in the evidence vault.

32.   In my training and experience, I know that the Apple iPhone has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the phone first came into the possession of ATF.

## NATURE OF THE EXAMINATION

33.   There is probable cause to believe that evidence that was once stored on the Apple iPhone described in Attachment "A" may still be stored there, for at least the following reasons:

a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet.  Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is because when a person "deletes" a file on a cell phone, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space for long periods of time before they are overwritten. "Free space" or "slack space" refers to space on the storage medium that is not currently being used by an active file. Additionally, a cellular phone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory, or "cache."

34. As further described in Attachment "B," this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described in the warrant, but also forensic evidence that establishes how the Apple iPhone described in Attachment "A" was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Apple iPhone described in Attachment "A" because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium

that can reveal information such as online nicknames and passwords.

b. Forensic evidence on a device can also indicate who has used or controlled the device.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, it is sometimes necessary to establish that a particular item is not present on a storage medium.

35.     Based on the foregoing, and consistent with Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

36.     Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a

premises.   Consequently, I submit there is good cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

**37.**   Based on my training and experience, and the facts set forth above, I believe there is probable cause that evidence of criminal violations of federal law, including but not limited to 18 U.S.C. § 922(g)(3) (Possession of a Firearm by a Person Who Is an Unlawful User of or Addicted to Controlled Substances); 18 U.S.C § 924(c) (Possession of a Firearm in Furtherance of a Drug Trafficking Offense); and 21 U.S.C § 841(a)(1)(A) (Possession with Intent to Distribute a Controlled Substance), will be found on the Apple iPhone described more completely in Attachment "A."

38.     WHEREFORE, your Affiant submits that this affidavit supports probable cause for a search warrant authorizing the examination of the Apple iPhone described in Attachment "A" to seek the items described in Attachment "B."


Further your affiant sayeth naught.

Kachine Jonese
Special Agent, ATF


Sworn to by the affiant telephonically in accordance with the procedures of Rule 4.1 of the Federal Rules of Criminal Procedure this the 14th day of July, 2023.

DWANE L. TINSLEY
United States Magistrate Judge